IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DENNIS J. MARTINEZ,

        Plaintiff,

vs.                                    No. CIV 02-1607 LCS

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse and Remand (Doc. 7), filed June 24, 2003. The Commissioner of Social Security issued a final decision denying Plaintiff's application for disability insurance benefits. This matter comes before this Court pursuant to 28 U.S.C. § 636(c). The United States Magistrate Judge, having considered the Motion, briefs, administrative record, and applicable law, finds that this Motion is well-taken and should be **GRANTED**.

### I. STANDARD OF REVIEW

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards. *Hamilton v. Sec'y of Health and Human Svcs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such relevant evidence as a reasonable mind might accept to support the conclusion. *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988). The decision of an Administrative Law Judge ("ALJ") is not supported by substantial evidence if the evidence supporting the decision is

overwhelmed by other evidence on the record. *Id.* at 805.

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or to last for a continuous period of at least twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. § 423(d)(1)(A)). The Secretary has established a five-step process for evaluating a disability claim. *Bowen v. Yuckert*, 482 U.S. 137 (1987). At the first four levels of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpart P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. *See Rayes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988). At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education and prior work experience. *See Gibson v. Bowen*, 838 F.2d 442, 448 (10th Cir. 1988).

## II. PROCEDURAL HISTORY

Plaintiff, now 32 years old, filed his application for supplemental security income on December 21, 2000, alleging disability commencing on November 24, 2000. (R. at 333-335.) Plaintiff's alleged disability was due to depression, panic attacks, and mild mental retardation. (R. at 245-46.) Plaintiff also complained of difficulty using his right hand due to a stab wound. (R. at 46.) Plaintiff completed the 11th grade and was placed in special education classes while in

school.  (R. at 32.)  Plaintiff has past relevant work as a maintenance technician and as a dishwasher.  (R. at 130-137.)

Plaintiff's application for supplemental security income was denied at the initial level on March 29, 2001 (R. at 337.) and at the reconsideration level on September 14, 2001.  (R. at 342.)  Plaintiff appealed the denial of his application by filing a Request for Hearing by Administrative Law Judge.  Attorney Barbara Jarvis was retained by Plaintiff on December 18, 2000.  (R. at 354.)  The ALJ conducted a hearing on April 17, 2002.  (R. at 25.)  Plaintiff and Vocational Expert Kevin Davis testified at the hearing.  (Id.)

The ALJ issued his decision on June 18, 2002 (R. at 9.), analyzing Plaintiff's claim in accordance with the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f).  At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability in 2000.  (R. at 19.)  At the second step, the ALJ found that Plaintiff had an impairment or combination of impairments considered 'severe' based on the requirements of 20 C.F.R. § 404.1520(b).  (Id.)  The ALJ further found that Plaintiff's medically determinable impairments did not meet or equal any of the impairments found in the Listing of Impairments ("Listings"), Appendix I, Subpart P, 20 C.F.R. §§ 401.1501-1599.  (Id.)  The ALJ also found that Plaintiff was not fully credible regarding his limitations.  (Id.)  At step four, the ALJ found that Plaintiff had a Residual Functional Capacity ("RFC") for medium, unskilled, non-public work involving 1 to 2 step processes with supervision.  (Id.)  Additionally, the ALJ found that Plaintiff's medically determinable disorders did not prevent Plaintiff from performing his past relevant work.  (Id.)  The ALJ also performed an alternative step five analysis in which he determined that there were other jobs in the national economy which Plaintiff could

perform. (Id.) Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, at any time during the period under review. (Id.)

Plaintiff filed a Request for Review of Hearing Decision by the Appeals Council and the Appeals Council denied this request for review on October 18, 2002. (R. at 6.) Hence, the decision of the ALJ became the final decision of the Commissioner for purposes of judicial review. On December 17, 2002, Plaintiff filed this action, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

### III. ANALYSIS AND FINDINGS

Plaintiff has a history of depression and alcohol abuse dating back a number of years. The Plaintiff was admitted to the University of New Mexico Mental Health Center in June of 2000 following a suicide attempt. (R. at 173-183.) He was noted to have overdosed on Trazodone[1] and was endorsing suicidal ideation upon admission. (R. at 173.) He also reported a two week history of depressive symptoms including decreased energy, concentration, impaired sleep and feelings of guilt and worthlessness. (Id.) Psychomotor movement was noted to be mildly limited. (Id.) Plaintiff's discharge summary included a diagnosis of alcohol induced mood disorder, alcohol dependence and alcohol withdrawal. (Id.) Plaintiff was noted to have a GAF of 20 upon admission, with a GAF of 45-50 during the past year.[2] (Id.)

---

[1]Trazodone Hydrochloride is indicated for the treatment of depression. Death from overdose of Trazodone has occurred with the most severe reactions including priapism, respiratory arrest, seizures, and EKG changes. *Physician's Desk Reference*, 1133, (54th ed. 2000).

[2]Global Assessment of Functioning (GAF) is used for reporting the clinician's judgment of the individual's overall level of functioning. The GAF scale may be particularly useful in tracking the clinical progress of individuals in global terms, using a single measure. A GAF of 20 indicates some danger of hurting self or others (e.g., suicide attempts without clear expectation of death; frequently violent; manic excitement) OR occasionally fails to maintain minimum personal hygiene (e.g., smears feces) OR gross impairment in communication (e.g., largely incoherent or mute). A GAF of 45 indicates serious symptoms (e.g., suicidal

Plaintiff again presented to the University of New Mexico Hospital Emergency Room on June 23, 2000 for treatment of lacerations to his wrist and finger. (R. at 196.) These lacerations were apparently obtained during an altercation with friends. (Id.) One laceration occurred as a result of Plaintiff's being hit with a bottle, the other resulted from being cut with a knife. (Id.) The wounds reached the subcutaneous skin layer and both were closed with several sutures. (Id.) Plaintiff did not require any type of antibiotic following the procedure, although anesthesia was used during the procedure to close the wounds. (Id.)

Plaintiff was evaluated by Disability Determination Services (DDS) of the State of New Mexico in February of 2001. (R. at 213.) The purpose of this evaluation was to determine Mr. Martinez's ability to perform work-related activities. Plaintiff was not noted to have marked limitations in any of the categories tested. (Id.) Plaintiff had mild limitations in the ability to remember and understand complex instructions and in the ability to adapt to changes in the workplace. (R. at 214.) It was further noted that Plaintiff did not currently have a problem with substance abuse. (Id.)

A psychiatric evaluation was performed by Dr. Gerald Friedman on March 20, 2001. (R. at 209.) Plaintiff was found to have alcohol dependance in remission and panic disorder without agoraphobia.³ (R. at 211.) Mr. Martinez was noted to have a GAF of 65 at that time, with some

---

ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). *Diagnostic and Statistical Manual of Mental Disorders* 32-34 (4th ed. 2000) [DSM-IV].

³Panic Disorder without Agoraphobia is characterized by recurrent, unexpected panic attacks, absence of agoraphobia (i.e., anxiety about being in places or situations from which escape might be difficult or in which help may not be available in the event of a panic attack), the panic attacks are not due to the physiological effects of a substance or general medical condition, and the panic attacks are not better accounted for by another mental disorder. DSM-IV at 440.

mild symptoms.[4] Mr. Martinez's prognosis for his alcohol problem with continued treatment was noted to be good. (R. at 212.) The prognosis for his panic disorder was found to be only fair because Plaintiff was not receiving treatment. (Id.) Mr. Martinez was noted to have only mild limitations in his ability to function in the workplace, contingent on his continued abstinence from alcohol. (Id.)

A psychiatric review by DDS completed on March 26, 2001 revealed anxiety evidenced by recurrent severe panic attacks and anxiety related to substance abuse. (R. at 221, 224.) Moderate difficulties in maintaining social functioning were noted as was an episode of decompensation of extended duration. (R. at 226.) A Residual Functional Capacity Assessment, also completed on March 26, 2001 revealed moderate limitations in Plaintiff's ability to maintain concentration, to socialize, and to adapt to changes in the workplace. (R. at 230-231.) It was generally felt however that Mr. Martinez's assertion of being unable to work was inconsistent with the available evidence. (R. at 232.)

Plaintiff presented to the University Hospital Emergency Room on April 4, 2001. At that time he had a Blood Alcohol Level of .274 and was complaining of "feeling groggy". (R. at 235.) Plaintiff stated he had been throwing up blood for three days. He denied suicidal ideation, but stated that he "just wants to die". (Id.) Plaintiff explained he had been hearing voices and that these voices said they were going to kill him. (Id.)

Plaintiff was evaluated by Annette Brooks, Ph.D. on August 9, 2001 for a disability evaluation. (R. at 242-246.) Dr. Brooks opined that her examination did not confirm previous

---

[4] A GAF of 65 indicates some mild symptoms (e.g., depressed mood or insomnia) OR some difficulty in social, occupational, or school functioning, but generally functioning pretty well with some meaningful interpersonal relationships. DSM-IV at 34.

6

diagnoses of mild mental retardation, alcohol dependence and depressive disorder nos.[5]  Dr. Brooks' assessment revealed that Plaintiff was performing intellectually in the borderline range.[6]  (R. at 245.)  Plaintiff was noted to be drinking regularly at this time.  (Id.)  Dr. Brooks determined that Plaintiff was likely drinking alcohol to manage his depression, rather than vice versa.  (Id.)  It was noted that Plaintiff had an extensive history of depressive symptoms, complete with suicidal intent and anger problems, but it was not clear what role alcohol played in these problems.  (Id.)  Dr. Brooks gave Plaintiff a GAF rating of 55.[7]  (R. at 246.)

Plaintiff underwent a second Mental Residual Functional Capacity Assessment in September of 2001, this time performed by Dr. Elizabeth Chiang.  (R. at 249.)  Dr. Chiang reiterated that Plaintiff had a long-standing drinking problem and continued to consume alcohol.  (Id.)  Dr. Chiang commented that anger problems likely played a significant part in Plaintiff's checkered work history.  (Id.)  Attention and concentration were found to be adequate.  (Id.)  Plaintiff's activities of daily living were intact although his ability to interact with others was found to be moderately limited.  (Id.)  Plaintiff was found to be capable of work with basic instructions.  Dr. Chiang did not feel the diagnosis of Fetal Alcohol Syndrome[8] was substantiated.

---

[5] Depressive Disorder Not Otherwise Specified includes disorders with depressive features in which the clinician has concluded that a depressive disorder is present but is unable to determine whether it is primary, due to a generalized medical condition, or substance induced.  DSM-IV at 381-82.

[6] Individuals diagnosed with Borderline Intellectual Functioning have an I.Q. in the 71-84 range.  DSM-IV at 740.

[7] A GAF of 55 indicates moderate symptoms (e.g., a flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers and co-workers.)  DSM-IV at 34.

[8] Fetal Alcohol Syndrome includes growth retardation before or after birth; facial anomalies; and CNS dysfunction, including varying degrees of mental retardation, and abnormal neurobehavioral development.  The syndrome is a leading known cause of mental retardation.  *The Merck Manual*, 2035 (17th ed. 1999).

(Id.)

Plaintiff was admitted to the University Medical Center in Albuquerque in December of 2001, again for alcohol dependency, at which time he was evaluated by Dr. J. Mitchell Simson. (R. at 300.)  Dr. Simson opined that Plaintiff was suffering from alcohol dependency and alcohol withdrawal syndrome.  (R. at 302.)  Dr. Simson also found that Plaintiff had recurrent depression. (Id.)  Dr. Simson also noted Plaintiff's history of peptic ulcer disease secondary to alcoholism. (Id.)  Also in December of 2001, Plaintiff received a substance abuse evaluation through Turquoise Lodge.  (R. at 305.)  At that time intensive inpatient treatment was recommended.  (R. at 313.)  Plaintiff was diagnosed with alcohol dependence, Fetal Alcohol Syndrome and ulcers. (Id.)  Plaintiff's GAF was rated at 33.[9]  (Id.)

## IV.  DISCUSSION

### a.  Analysis at Step Four of the Sequential Evaluation

The ALJ completed an analysis at step four of the sequential evaluation as well as an alternative analysis at step five.  The Plaintiff contends that the ALJ erred both in finding that Plaintiff retained the Residual Functional Capacity to perform his past relevant work as well as in finding that there were other jobs in the national economy which Plaintiff could perform.  (R. at 349-351.)

At step four of the analysis, the ALJ determined that Plaintiff retained the residual functional capacity for medium, unskilled, non-public work consisting of 1 to 2 step processes

---

[9]A GAF of 33 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school.)  DSM-IV at 34.

with supervision. (R. at 16.) The ALJ then based his conclusion that Plaintiff could perform his past relevant work on an analysis by DDS and by questioning the vocational expert about the demands of Plaintiff's past relevant work. (R. at 18.)

It is apparent from the ALJ's opinion that he considered all the evidence as required by Tenth Circuit law. *See Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996). However, with regard to the ALJ's conclusion about Plaintiff's residual functional capacity, it is not clear that the ALJ linked his findings with specific evidence. The ALJ discussed the Plaintiff's treatment records for his depression, borderline mental functioning and alcohol dependency and then reached the conclusion that Plaintiff had the capacity for medium, unskilled, non-public work. (R. at 16.)

It is well-established in this Circuit that merely considering all the evidence presented is not enough. The ALJ must also link his findings with specific evidence. *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). In the present case, the ALJ cited his conclusions as to Plaintiff's residual functional capacity, but did not explain the reasoning behind these conclusions. It is well-settled that administrative agencies must give reasons for their decisions. *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988). It is not enough for the ALJ to merely list the factors he considered. Rather, he must explain why the specific evidence relevant to each factor led him to conclude that Plaintiff retained the residual functional capacity for medium, unskilled, non-public work. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). Because the ALJ did not properly analyze Plaintiff's residual functional capacity, the case must be remanded for a step four analysis consistent with this opinion.

The ALJ also erred at step four in failing to conduct the proper analysis of Plaintiff's

capacity to perform his past relevant work.  The ALJ's opinion refers to the fact that DDS concluded that the Plaintiff could return to his previous work as a dishwasher.  (R. at 18.)  The ALJ also discussed his conversation with Mr. Davis, the vocational expert at Plaintiff's hearing, in which Mr. Davis opined that Plaintiff could perform his past relevant work as a dishwasher and commercial cleaner.  (R. at 18.)

However, the Code of Federal Regulations as well as the law of the Tenth Circuit requires the ALJ to make specific, rather than conclusory, findings at step four.  The proper analysis for determining a claimant's ability to perform his past relevant work is comprised of three phases.  *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).  At the first phase, the ALJ must evaluate the Plaintiff's physical and mental residual functional capacity.  SSR 86-8, Soc. Sec. Rep. Serv., Rulings 1983-1991, 423, 427 (West 1992).  At the second phase, the ALJ must determine the physical and mental demands of the Plaintiff's past relevant work.  20 C.F.R. § 404.1520(e).  Finally, the ALJ must determine whether the claimant retains the ability to meet the job demands found in phase two despite the physical and/or mental limitations found in phase one.  SSR 82-62, Soc. Sec. Rep. Serv., Rulings 1975-1982, 809; *Winfrey*, 92 F.3d at 1023.

Phase one of the step four analysis requires the ALJ to evaluate the Plaintiff's mental and physical residual functional capacity.  As mentioned *supra*, the ALJ's analysis of Plaintiff's residual functional capacity was deficient because the ALJ failed to link his findings with specific evidence.  *See Kepler*, 68 F.3d at 391.  It also does not appear that the ALJ conducted the proper analysis at the second phase of step four.  The ALJ's analysis does not reveal any discussion of the physical and mental demands of Plaintiff's past relevant work as required by *Winfrey*.  (R. at 18.)  Because the ALJ did not properly analyze Plaintiff's limitations at phase one of the step four

analysis and the requirements of his past relevant work at phase two of the analysis, the conclusion reached at phase three of the analysis, namely, that Plaintiff can return to his past relevant work, is necessarily suspect and must be reevaluated.

Given these errors, this Court finds that the ALJ did not conduct a proper analysis of Plaintiff's residual functional capacity at step four of the sequential analysis.  As such, this case must be reversed and remanded for further proceedings consistent with this opinion.

### b. Analysis at Step Five of the Sequential Evaluation

The ALJ also completed an alternative step five analysis under the sequential evaluation at which he determined there were other jobs existing in the national economy which Plaintiff could perform.  (R. at 18.)  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is capable of performing other substantial gainful activity given his residual functional capacity, age, education, and prior work experience.  *Gibson*, 838 F.2d at 448.

The ALJ's step five analysis was deficient.  Based on the hearing transcript and the ALJ's opinion, it appears that the ALJ failed to adequately develop the record in questioning the Vocational Expert about what other jobs Plaintiff would be capable of performing.  (R. at 18, 58-59.)  Plaintiff contends that the ALJ erred in failing to elicit enough evidence with regard to skills required of the jobs listed by the VE.  Plaintiff argues the ALJ should have assessed whether a conflict existed between the Dictionary of Occupational Titles and the VE's testimony as to the skills required for each job listed.  Specifically, the VE listed 3 jobs, Cleaner/Housekeeper, (DOT # 323.687-014), Candy Cutter, (DOT # 790.687-010) and Ware Cleaner (DOT # 774.687.022), which he believed the Plaintiff could perform.  (R. at 59.)

11

The Tenth Circuit has found that determining the functional demands and job duties of specific jobs and matching those requirements to a claimant's limitations is the very task the ALJ must undertake at step five. *Haddock v. Apfel*, 196 F.3d 1084, 1089 (10th Cir. 1999).  To allow an ALJ to elicit and rely on summary conclusions given by a VE, in the absence of contrary testimony elicited by the claimant through cross-examination, would amount to shifting the burden to produce and develop vocational evidence back to the claimant. *Id.*

An examination of the jobs listed by the VE raises questions as to whether the VE's opinion was consistent with the Plaintiff's known limitations.  While it appears that Plaintiff's attorney attempted to develop the record on this point through cross-examination, the ALJ did not allow Ms. Jarvis to conduct a thorough examination regarding the requirements for the jobs listed by the VE.  (R. at 60-70.)  The Tenth Circuit has previously held that the ALJ has the responsibility of developing the record on this point. *Id.*  When a discrepancy exists between the VE's opinion and the Dictionary of Occupational Titles with respect to a claimant, it is the ALJ's responsibility to elicit a reasonable explanation for this discrepancy before relying on the VE's opinion that the claimant could perform the listed jobs. *Id.*

Furthermore, the ALJ's failure to afford the Plaintiff with an opportunity to cross-examine the vocational expert raises doubts as to the constitutional adequacy of the Plaintiff's hearing. Due process violations have been found in the Social Security setting where the ALJ relies on a expert's report without permitting the claimant to cross-examine that expert. *See Richardson v. Perales*, 402 U.S. 389, 410 (1971); *Allison v. Heckler*, 711 F2d 145, 147 (10th Cir. 1983).  Other circuits have agreed in similar circumstances. *See Townley v. Heckler*, 748 F.2d 748 F.2d 109, 114 (2nd Cir. 1984)(holding denial of due process if claimant not given an opportunity to cross-

examine and rebut vocational expert's post-hearing report); *Schmoll v. Harris*, 636 F.2d 1146 (7th Cir. 1980)(finding denial of due process where claimant not allowed to cross-examine a vocational expert who appeared and testified at his hearing).

Given the deficiencies found in the ALJ's step five analysis, this case must be reversed and remanded for further proceedings consistent with this opinion.  Should the ALJ reach step five upon remand, he must conduct the above analysis to determine if the DOT listings offered by the Vocational Expert are consistent with Plaintiff's known limitations.

## V.  CONCLUSION

Upon review of the evidence presented in this Motion to Reverse and Remand for Rehearing, this Court has determined that the Commissioner did not properly analyze Plaintiff's abilities at step four and at step five of the sequential analysis.  On remand the ALJ must, at step four, link his findings with specific evidence, analyze the Plaintiff's RFC in accordance with the law of this Circuit and make other findings consistent with this opinion.  Should the ALJ reach step five upon remand, he must adequately develop the record in questioning the Vocational Expert and make other findings consistent with this opinion.  Accordingly, Plaintiff's Motion to Reverse and Remand for Rehearing is **GRANTED**.

**A JUDGMENT CONSISTENT WITH THIS OPINION SHALL ISSUE**.

_____
**LESLIE C. SMITH
UNITED STATES MAGISTRATE JUDGE**